UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VICTOR JOSEPH GRAY,<br><br>Defendant. | Case No. 3:25-cr-00212-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are five motions. Defendant Victor Joseph Gray has filed three Motions in Limine seeking pretrial rulings on jury instructions and courtroom dress. Dkts. 39; 40; 42. As Gray's Second Motion in Limine (Dkt. 40) exceeds the page limit imposed by local rule, Gray has filed an additional motion seeking leave to file an overlength brief. Dkt. 41. Finally, the United States seeks a pretrial ruling on whether Gray may use a prior conviction to impeach a Government witness at trial. Dkt. 46.

The Court HOLDS IN ABEYANCE Gray's First Motion in Limine (Dkt. 39); DENIES Gray's Second Motion in Limine (Dkt. 40), GRANTS Gray's Motion to Exceed the Page Limit (Dkt. 41), GRANTS Gray's Third Motion in Limine (Dkt. 42), and GRANTS the Government's Motion in Limine (Dkt. 46). Additionally, the Court construes the Government's Response to Gray's Third Motion in Limine (Dkt. 60) as another Motion

in Limine, and GRANTS that Motion as well.

## II.  BACKGROUND

The Court has previously discussed this case's background in its First Memorandum Decision and Order on Motions in Limine, Dkt. 64, and incorporates that background by reference.

On May 20, 2025, after a heated confrontation, Defendant Victor Joseph Gray shot and killed Melvin "Crow" Williamson, Jr.[1] Dkt. 2; *accord* Dkt. 31. Gray maintains that the shooting was justified as an act of self-defense. *See* Dkt. 31, at 2–3.

The Government maintains that Williamson was an Indian and that the shooting occurred on Indian Country, rendering Gray's actions subject to federal criminal law. A federal grand jury charged Gray with second degree murder and the unlawful use of a firearm in a crime of violence. Dkt. 2. Trial is scheduled to begin on January 29, 2026. Dkt. 32. In preparation for trial, the parties have asked the Court to rule on several pretrial matters.

First, Gray asks the Court to instruct the jury on self-defense. Dkt. 39. Gray asserts he is prepared to present evidence tending to show that he reasonably believed his use of force was necessary to defend himself or another against the imminent unlawful use of force and that his use of force was no more than reasonably necessary under the circumstances. *Id.* at 7–8.

---

[1] Williamson often went by his Native name, "Crow." Because he is referred to as Williamson in police reports, briefs, and other filings of record, the Court will refer to him as "Williamson" for the avoidance of confusion.

Second, Gray asks the Court to instruct the jury on Idaho's "Stand Your Ground" law. Gray suggests he knew the requirements of Idaho's stand your ground law and believed in good faith that his actions qualified as self-defense thereunder. Idaho's stand your ground law is not relevant to the elements of self-defense in a federal criminal trial. Nonetheless, Gray argues that if he acted in good faith reliance on Idaho's stand your ground law, he could not have formed malice aforethought, the mental state necessary to commit murder. Because of the legally intricate legal situation in Indian Country, Gray seeks leave to file an overlength brief in support of this argument.

Third, Gray asks the Court to permit him to appear in civilian dress without visible shackles, and to exclude non-expert witnesses from the courtroom when they are not testifying.

Finally, the United States asks the Court to exclude impeachment evidence regarding the prior conviction of Basil George, an anticipated Government witness. The Government argues the conviction is inadmissible under Federal Rule of Evidence 609.

The parties have responded to each other's Motions, Dkts. 29; 30; 36, and have replied, Dkts. 67, 70. While Gray has not replied to the Government's response regarding Dkt. 46, the time for doing so has passed. The matters are now ripe for review.

### III. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cnty.*, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968

(7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (cleaned up), "a district court has discretion in ruling on a motion in limine," *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## IV. DISCUSSION

The Government does not oppose Gray's Third Motion in Limine (Dkt. 42), and Gray's Motion conforms to the Court's standard practice regarding criminal trials. The Court, therefore, GRANTS Gray's Third Motion in Limine as explained in more detail below.

The remaining Motions, however, are contested.

### A. Self-Defense (Dkt. 39)

Gray asks the Court to instruct the jury on self-defense. Gray suggests he will present evidence tending to show he reasonably believed Williamson posed an imminent threat of death or serious bodily harm to himself or his girlfriend, and that he is therefore entitled to a self-defense instruction. Dkt. 39. The Court cannot determine whether Gray satisfies the requirements of a prima facie self-defense instruction until the evidence is

submitted to the jury at trial. The Court, therefore, holds Gray's Motion IN ABEYANCE pending the close of evidence.

### B. Idaho's Stand Your Ground Law (Dkt. 40)

Gray next asks the Court to instruct the jury on Idaho's stand your ground law.

*1. Motion to Exceed Page Limit (Dkt. 41)*

As a threshold matter, Gray asks permission to file an overlength brief in support of this argument because of the legally convoluted status of Indian Country. A homicide trial where the defendant claims actual knowledge and reasonable reliance on state laws of concurrent applicability—and seeks to use that knowledge as a defense—is sufficiently unusual to justify an overlength brief. The Motion to Exceed the Page Limit (Dkt. 41) is, therefore, GRANTED.

*2. Self-Defense and Malice Aforethought*

Gray argues that his knowledge of Idaho's stand your ground law is relevant to three different questions. First, Gray argues that because he knew and followed Idaho stand your ground law, and Idaho stand your ground law sanctioned his use of deadly force under the circumstances, his use of force was "reasonable" as required by the first element of self-defense. Dkt. 40, at 11–14. Second, Gray argues he could not have formed malice aforethought because he believed he was acting in accordance with Idaho's stand your ground law. Dkt. 40, at 14–19. Gray briefly raises a third argument: Idaho law is an official pronouncement of the law, and reasonable reliance on an official pronouncement is a defense. Dkt. 40, at 17. In essence, Gray argues he believed he was beholden to Idaho law

MEMORANDUM DECISION AND ORDER - 5

and that he acted in compliance with that law; therefore, he is not criminally culpable.[2]

At the outset, Idaho law on self-defense is not binding in a federal criminal prosecution. In a federal prosecution, self-defense is a matter of federal common law. *Prudential Ins. Co. of Am. v. Donlon*, 2015 WL 2165881, *3 (D. Alaska May 7, 2015) (citing *United States v. Desinor*, 525 F.3d 193, 199 (2d Cir. 2008)). This Court is, therefore, bound to follow Ninth Circuit precedent regarding self-defense. The Ninth Circuit has held that its model jury instruction on self-defense "accurately states the elements of self-defense and defense of another in this Circuit." *United States v. Keiser*, 57 F.3d 847, 851 (9th Cir. 1995). Idaho law is not, therefore, binding in this prosecution.[3]

Gray still argues he is not criminally culpable because his knowledge of Idaho law renders his state of mind non-criminal. When a criminal defendant argues he should not be held liable for a crime based on his erroneous or incomplete knowledge of the law, he is

---

[2] Gray further argues that the Government, in response, failed to satisfactorily address these arguments and urges the Court find the Government has waived its opportunity to rebut his arguments. Dkt. 70, at 1 n.1, 12–16. The Court believes the Government has addressed those arguments and does not find them waived.

[3] Gray also cites case law regarding the Assimilative Crimes Act ("ACA"). Dkt. 40, at 21; Dkt. 70, at 8–9. The ACA is a federal law (18 U.S.C. § 13) allowing federal courts to apply state laws to crimes committed on federal property (such as military bases, national parks). The ACA also applies to Indian Country. As Gray himself points out, however, the ACA does not apply where Congress has defined a crime: "If an offense is committed in a federal enclave *and there is no federal statute defining that offense* (i.e., an offense 'not made punishable by any enactment of Congress'), the federal government may nonetheless prosecute the offense through the ACA . . . ." *United States v. Smith*, 925 F.3d 410, 415 (9th Cir. 2019) (emphasis added). Here, Congress has defined the crime of second degree murder, rendering the ACA inapplicable. 18 U.S.C. § 1111. Gray argues that, although the ACA does not apply to the Government's case in chief, the Court should nonetheless use the ACA to gap fill Idaho's self-defense law because Congress has not passed an act outlining the law of self-defense. Dkt. 40, at 21; Dkt. 70, at 9. If the ACA presumptively adopted state criminal law generally, and then excepted out situations where Congress had passed a criminal law on point, Gray might be correct. But the plain text of the ACA suggests that a lack of a Congressionally enacted crime on point is a condition precedent to the law's operation, not an exception to a general rule of inclusion. 18 U.S.C. § 13. The ACA, therefore, cannot incorporate Idaho stand your ground law into the federal common law of self-defense.

MEMORANDUM DECISION AND ORDER - 6

attempting to make a mistake of law defense. *See* Dkt. 40, at 17 (stating the Model Penal Code rule regarding mistake of law).

A mistake of law is relevant only if it negates the mental state required to commit the crime, establishes a mental state required to prove a defense, or arises out of a defendant's reasonable reliance on an incorrect official statement of the law. *See* Model Penal Code § 2.04(1) § 2.04(3)(b), *see also Ostrosky v. State of Alaska*, 913 F.2d 590, 595 (9th Cir. 1990) (citing with approval M.P.C. § 2.04 explanatory note).

Gray first argues his mistake of law proves the reasonability element of self-defense. But Gray misunderstands what a defendant must have "reasonably" believed to claim self-defense. In the Ninth Circuit, the defendant must have reasonably believed his use of force *was necessary to defend against an imminent threat of harm*. *United States v. Urena*, 659 F.3d 903, 907 (9th Cir. 2011). Gray does not argue Idaho law led him to reasonably believe his use of force was necessary under the circumstances. Instead, Gray argues he reasonably believed his use of force *would be treated as legal in court*. Dkt. 40, at 13. But a defendant's belief regarding the legality of his use of force is irrelevant to the whether he reasonably believed it was necessary under the circumstances. Gray's beliefs about Idaho law are, therefore, irrelevant to whether he acted in self-defense.

Gray relies on *United States v. Wallen* to argue that a good faith reliance on state law is a defense to second degree murder. Dkt. 40, at 12–13. There, Dan Wallen was prosecuted for killing three grizzly bears in violation of the Endangered Species Act. 874 F.3d 620, 624–25 (2017). By statute, the ESA permitted Wallen to raise his good faith belief that he was acting to protect himself or others as a complete defense to criminal ESA

MEMORANDUM DECISION AND ORDER - 7

liability. *Id.* at 627–28. The Ninth Circuit found that the magistrate judge erred in applying the traditional objective rule on self-defense established in *Keiser*; the judge should have required Wallen to prove only that he subjectively believed in good faith that he was acting in defense of self and others. *Id.* at 628. Far from casting doubt on *Keiser*, however, the *Wallen* court went out of its way to emphasize that its decision was grounded in the ESA's text, and that *Keiser* would have been persuasive but for the ESA's explicit creation of a statutory good faith defense. *Id.* Because 18 U.S.C. § 1111 does not incorporate a similar good faith standard, *Wallen* is inapposite.

Gray next argues that a person attempting to act in accordance with state law cannot form malice aforethought (the mental state required to commit second degree murder), but a mistake of law cannot negate malice aforethought. A mistake of law negates the mental state required to commit a crime only if an element of the crime is the defendant's knowledge of the legal status of a "collateral matter." *Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1138–39 (9th Cir. 2021) (citing *Rehaif v. United States*, 588 U.S. 225, 234–35 (2019)). For instance, a mistake of law is a defense to a charge of unauthorized use of food stamps. The specific intent to use food stamps in a manner *the defendant subjectively knows is illegal* is one of the elements of the crime of unauthorized use of food stamps. *See Rehaif*, 588 U.S. at 234. The defendant's subjective knowledge of the illegality of his use is a collateral matter, and the defendant may raise his mistake of law as a defense. *Id.*

Gray, however, cannot raise his mistake of law as a defense to malice aforethought because malice aforethought does not require any such knowledge. "To kill with malice aforethought means to kill either deliberately and intentionally or recklessly with extreme

MEMORANDUM DECISION AND ORDER - 8

disregard for human life." *United States v. Begay*, 33 F.4th 1081, 1091 (9th Cir. 2022) (en banc) (quoting Ninth Cir. Model Inst. 16.2). Neither mental state requires a defendant to know the legal status of any collateral matter; the focus is entirely on whether the defendant knew his actions put another's life in jeopardy. That knowledge is a question of fact, not law. Gray's mistake of law, therefore, cannot negate the mens rea of second degree murder.

Third, Gray in passing argues he is entitled to raise his mistake of law defense because he acted "in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in a statute or other enactment." Dkt. 40, at 17 (quoting Model Penal Code § 2.04(3)(b)). However, even assuming the official pronouncement mistake of law defense applied in a federal second-degree murder prosecution, Gray would not be entitled to it here because Idaho law has not been determined to be invalid or erroneous. Idaho stand your ground law is presumptively valid; it simply is not a defense to the federal crime of second degree murder.

Because Gray's mistake of law does not negate the mens rea of the crime charged, because it is not relevant to the mens rea required to prove self-defense, and because it was not based in a change in valid law, Gray is not entitled to an instruction on Idaho's stand your ground law.

### 3. Due Process and Theory-of-the-Defense

Gray also makes several appeals to due process. *See, e.g.,* Dkt. 40, at 23; 70, at 10. In essence, he points out that federal law and state law on self-defense are inconsistent and argues basic justice requires the Court to instruct the jury that he cannot be criminally liable where he intentionally followed state law. But every American is held to obey both federal

and state law, even where they cover the same conduct. Under the theory of dual sovereignty, the Supreme Court has consistently held "an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." *Gamble v. United States*, 587 U.S. 678, 687–88 (2019) (quoting *United States v. Lanza*, 260 U.S. 377, 382 (1922)). Because of the dual-sovereignty doctrine, the two sovereign's laws need not possess the same defenses, and where the substantive law of one is more restrictive than that of the other, citizens are obliged to follow the more restrictive sovereign's laws. Here, Gray was obliged to obey Idaho's (presumably laxer) definition of self-defense as well as federal law's (presumably more restrictive) definition. Instructing the jury accordingly is not a violation of due process.

For the same reason, it is not a due process violation for prosecutors to cooperate in their exercise of discretion to charge Gray in federal court instead of state court. Under the dual-sovereignty doctrine, Gray may be criminally punished for the same conduct by both state and federal governments. *Id*. Presuming that Gray is indeed a non-Indian who allegedly committed a homicide against an Indian on Indian Country, his conduct is subject to both Idaho and federal homicide law. *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 656 (2022). Gray may be guilty under the laws of both, only one, or neither. Because Gray is answerable to both state and federal courts, Gray is not legally prejudiced by state and federal prosecutors cooperating to prosecute him in federal court first.

Finally, Gray demands to present his theory of the case to the jury. Dkt. 40, at 23–24, 28–35. "[A] defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound and evidence in the case makes it applicable . . . ." *United States*

*v. Houston*, 648 F.3d 806, 816 (9th Cir. 2011). For the reasons stated above, Gray's mistake of law defense is not legally sound. Gray argues his defense is "legally sound" insofar as it arises from a legal source: the Idaho Code. But not every "legal" argument is "sound." An argument is "legally sound" if it accurately states the law. *See United States v. Blumenthal*, 945 F.2d 280, 282–83 (9th Cir. 1991). Gray's Idaho-stand-your-ground-law argument does not accurately state the law of self-defense applicable to his 18 U.S.C. § 1111 prosecution. Therefore, he is not entitled to an instruction based on his theory of the case regarding Idaho law.

The Court intends to fully and accurately instruct the jury on Gray's theory of self-defense, if he makes out a prima facie case for the same. But whatever instructions the Court gives, they will accurately reflect the Ninth Circuit's law on self-defense rather than Idaho's. Accordingly, Gray's Second Motion in Limine is DENIED

*4. Miscellanea*

Gray raises a few miscellaneous points in his Second Motion in Limine that the Court wishes to address. First, Gray points out he is charged with use of a firearm in a crime of violence under 18 U.S.C. § 924(c), and the only other crime he is charged with is second degree murder under 18 U.S.C. § 1111. Under the Ninth Circuit's holding in *United States v. Begay*, second degree murder under § 1111 can serve as a predicate offense for § 924(c) purposes. 33 F.4th at 1093. However, the Ninth Circuit appears ready to reconsider *Begay* en banc. *United States v. Gomez*, 133 F.4th 1083 (9th Cir. 2025) (granting application for reconsideration en banc). Although *Begay* has been called into question based on its tension with the Supreme Court's holding in *Borden v. United States*, 593 U.S. 420 (2021),

MEMORANDUM DECISION AND ORDER - 11

*Begay* was interpreting *Borden*. This Court, therefore, must apply *Begay* until and unless the Ninth Circuit announces an opinion contradicting *Begay*.

Gray's reply further asserts that "The Government has not opposed Gray's request to introduce at trial argument regarding Idaho's Stand Your Ground Law, but instead the Government opposes only Gray's request for supplemental jury instructions on said statutory scheme. Resultantly, Gray will consider the Government's non-opposition as a concession and waiver of the trial argument issue . . . ." Dkt. 70, at 1 n.1. The Court disagrees. The Government opposes Gray's ability to argue Idaho stand your ground law because it does not believe the law is logically related to Gray's reasonable beliefs regarding his use of force. Dkt. 53, at 6–7. In other words, the Government argues that Idaho's stand your ground law is irrelevant.

For the reasons stated above, the Court agrees with the Government. Gray has failed to show his legal knowledge is probative of any material issue. *See* Fed. R. Evid. 401. Accordingly, the Court finds any argument based on Gray's knowledge of Idaho stand your ground law is inadmissible. This ruling is in limine in posture, and the Court may revisit it at trial. And Gray may discuss self-defense as much as he pleases. But for Gray's knowledge of Idaho stand your ground law to be admissible at trial, Gray must show that such knowledge is probative of some material issue.

### C. Gray's Requests Regarding Courtroom Dress (Dkt. 42)

Gray asks the Court to permit him to appear in civilian dress, without visible shackles, and to exclude non-expert witnesses from the courtroom during trial. Dkt. 42. The Government does not oppose Gray's request. Dkt. 60. Because Gray's requests

comport with the Court's usual practice in criminal trials, and because the Government does not oppose his motion, the Motion is GRANTED. Gray must obtain the civilian clothes he wishes to appear in, and he must coordinate the logistics of appearance in civilian dress without visible shackles with the U.S. Marshall's Service.

In its response, the Government makes three further requests. First, the Government seeks leave to permit its agent, S.A. Rob Hille, to remain in the courtroom as the designated representative of the United States pursuant to Fed. R. Evid. 615(a)(2). Second, the Government asks the Court to prohibit disclosure of trial testimony to non-expert witnesses under Rule 615(b)(1). Finally, the Government asks the Court to prohibit non-expert witnesses from independently accessing trial testimony under Rule 615(b)(2). Dkt. 60. The Government's requests are construed as a Motion in Limine and, as they are consistent with the Court's standard practices, they are GRANTED.

### D. Basil George's Conviction (Dkt. 46)

Finally, the Government moves to prevent Gray from impeaching anticipated Government witness Basil George's character for truthfulness with his prior felony conviction. Dkt. 46. Gray does not argue that the conviction is admissible under Fed. R. Evid. 609; the Court, therefore, GRANTS the Government's Motion in Limine. Gray may not use Basil's conviction to impeach his character for truthfulness. However, Gray in response argues that he intends to use his knowledge of Basil's conviction as affirmative evidence of Gray's own state of mind. Dkt. 54. Such uses are not subject to Rule 609. This Order does not address whether Gray's uses proposed in Dkt. 54 are admissible one way or another.

MEMORANDUM DECISION AND ORDER - 13

## V. CONCLUSION

Trial is fast approaching, and the parties have thoroughly and thoughtfully briefed critical issues. As the Court stated in its prior order, having reviewed the briefs, some objections can be sustained now, some overruled now, and some will have to be decided with the benefit of greater context.

## VI. ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Gray's First Motion in Limine (Dkt. 39) is HELD IN ABEYANCE pending the close of evidence.

2. Gray's Second Motion in Limine (Dkt. 40) is DENIED.

3. Gray's Motion for Leave to File Excess Pages (Dkt. 41) is GRANTED.

4. Gray's Third Motion in Limine (Dkt. 42) is GRANTED.

5. The Government's Motion in Limine (Dkt. 46) is GRANTED.

6. The Government's Response to Gray's Third Motion in Limine (Dkt. 60) is construed as an additional Motion in Limine, and the Motion is GRANTED. S.A. Rob Hille will be permitted to remain at the Government's table at trial as the Government's representative. All parties, their counsel, and their witnesses are further prohibited from disclosing trial testimony to any excluded witness, whether personally or through others. All witnesses of either party are further prohibited from accessing trial testimony by any means, whether personally or

through others. Counsel shall be responsible for ensuring that their client and the witnesses they intend to call are aware of this Order.

DATED: January 12, 2026

_____
David C. Nye
U.S. District Court Judge